United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Francisco Lagos Marmol and Fernando Van Peborgh, Plaintiffs, <br><br> v. <br><br> Kalonymus Development Partners, LLC, Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 22-20703-Civ-Scola <br> ) <br> ) <br> ) |
| Kalonymus Development Partners, LLC, Plaintiff, <br><br> v. <br><br> Francisco Lagos Marmol and Fernando Carlos Van Peborgh, Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 22-20881-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order Granting Motion to Dismiss**

  In this consolidated case the parties' dispute centers around what essentially amounts to a real-estate transaction in Miami, Florida, that fell apart. Francisco Lagos Marmol and Fernando Van Peborgh (the "Sellers"), as Plaintiffs in the original 22-20703 case, seek a declaratory judgment against Kalonymus Development Partners, LLC (the "Buyer") as to the parties' performance, or lack thereof, under the purchase contract at issue, and the resulting consequences. (Sellers' Compl., ECF No. 8.) The Buyer, as the Plaintiff in the original 22-20881 case, regarding the same transaction, seeks specific performance of the transaction and damages, regarding its claims for breach of contract (counts one through three) and negligent misrepresentation (count four). (Buyer's Compl., ECF No. 35-2.) The Buyer now asks the Court to dismiss the Sellers' complaint, arguing, among other things, that the Sellers improperly seek declaratory relief when their grievances focus solely on past alleged wrongs and are duplicative of the breach-of-contract issues raised in the Buyer's complaint. (Buyer's Mot., ECF No. 11.) The Sellers resist dismissal, insisting their complaint is neither duplicative nor purely retrospective. (Sellers' Resp., ECF No. 24.) The Buyer has replied (Buyer's Reply, ECF No. 28) and the motion is ripe for adjudication. After careful review, the Court agrees with the Buyer and **grants** its motion to dismiss (**ECF No. 11**) the Sellers' declaratory-action complaint (**ECF No. 8**).

### 1. Legal Standard

A court considering a motion to dismiss, filed under Rule 12(b)(6), must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqubal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Further, courts have discretion in deciding whether to allow a declaratory action to proceed. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995). A court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction. 28 U.S.C. § 2201. "The only relevant inquiry in a motion to dismiss a declaratory judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Fernando Grinberg Tr. Success Int. Properties LLC v. Scottsdale Ins. Co.*, 10-20448-CIV, 2010 WL 2510662, at *1 (S.D. Fla. June 21, 2010) (Cooke, J.). "The declaratory judgment is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1230 (S.D. Fla. 2009) (Marra, J.) (cleaned up). Importantly, "a trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." Fernando, 2010 WL 2510662 at *1 (cleaned up).

### 2. Background[1]

In mid-2021, the parties entered into an agreement through which the Buyer was to purchase the Sellers' membership interests in a Florida limited liability company—Best Peacock Inn, LLC—which, in turn, owns property in

---

[1] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). The Court also considers issues raised outside the complaint with respect to its evaluation of the appropriateness of the Sellers' request for declaratory relief.

Miami, Florida. The parties agreed on a sales price of $5,450,000 with a closing date on or before October 8, 2021.[2] The parties' agreement also required the Sellers to deliver affidavits, attesting that the existing mortgage on the property would be satisfied at closing.

Although the timing is not exactly clear, at some point in October, the Sellers say they "learned" that their lender would only provide a payoff and satisfaction of mortgage during the first quarter of any given year—in other words, only from January through March. (Sellers' Compl. ¶ 18.) Although the Sellers say they had been unaware of this condition, the Sellers' own loan documents contain a provision spelling this out. (*Id.*) The Sellers acknowledge their inability to close amounted to a default under the purchase agreement. (*Id.* ¶¶ 18, 20, 22, 23, 36.a.–b.)

Under the purchase agreement, in the "event of a default by Seller," the Buyer has two remedies: (1) terminate the agreement and receive the return of its deposit or (2) "proceed[] to enforce [the] Agreement by an action for specific performance, . . . without waiving Buyer's right to recover any and all losses, damages, costs and expenses resulting from Seller's default." (Sellers' Compl., Ex. A., Purch. Agmt. § 8.2, ECF No. 8-1.)[3] Despite the breach, the Sellers unilaterally continued to prepare for closing, under the terms of the agreement (except for the closing date limitation), apparently intending for the transaction to close at the first available opportunity—in other words, in early January 2022. In the meantime, the Buyer, apparently choosing the second option available to it in the event of a Seller breach, filed a complaint in state court for, among other things, specific performance of the purchase agreement. (Sellers' Compl. ¶ 24.)

As the Sellers describe it, the Buyer, in its complaint, (1) maintained it was prepared to consummate the transaction, under the terms of the agreement (again, save for the closing date); and (2) sought damages as a result of its increased transaction fees and interest rates as to its independent financing deal and lost rental income. (*Id.* ¶¶ 25–27.) The day after the Buyer filed its complaint, the Sellers informed that they were "ready, willing and able to close at the earliest possible opportunity." (*Id.* ¶ 28.) The Sellers characterize

---

[2] Under the agreement, closing was to occur thirty days following the last day of the inspection period. The initial inspection period was extended, by agreement, through September 8, 2021, meaning the parties were required to close by October 8, 2021.

[3] The Sellers describe the second option as allowing the Buyer to "proceed to enforce the Agreement, without waiving [the Buyer's] right to recover damages in the event of a default by [the Sellers]." (*E.g.*, Sellers' Compl. ¶ 22.) This mischaracterizes the agreement, a copy of which is attached to the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern.") (cleaned up).

the Buyer's response as rejecting the offer to proceed, with a counteroffer of either (1) proceeding with the transaction with a substantial discount to the purchase price, of "hundreds of thousands of dollar"; or (2) terminating the agreement, with the Sellers' paying the Buyer a $1 million termination fee. (*Id.* ¶ 30.) As discussions between the parties proceeded, into February 2022, the Buyer refused to entertain the Sellers' proposal to close, under the original terms, before March 15, 2022, unless the Sellers agreed to a $1,150,000 reduction in the original purchase price. (*Id.* ¶¶ 32–33.) The Sellers interpret the Buyer's refusal to close under the agreement's original terms as a separate breach of the contract, entitling them, under the purchase agreement, to retain the Buyer's deposit as liquidated damages. (*Id.* ¶ 34.)

In their sole claim, in their case against he Buyer, the Sellers seek declaratory relief, asking the Court to find the following:

a. Following Plaintiffs' failure to close on October 8, 2021, Defendant elected to continue with and enforce the Agreement rather than terminate it.

b. By electing to continue the Agreement and seeking to enforce it despite Plaintiffs' alleged initial breach for failure to close on October 8, 2021, the obligations of both Plaintiffs **AND** Defendant under the Agreement remained in force as of December 20, 2021 and through February 22, 2022.

c. However, on or about February 22, 2022, Defendant anticipatorily repudiated and/or breached its obligations under the Agreement when it unequivocally refused to proceed to closing and further perform unless Plaintiffs agreed to a different purchase price.

d. Because Defendant breached and/or anticipatorily breached the Agreement, Plaintiffs may terminate the Agreement and are not obligated to continue to perform under the Agreement.

e. Because Defendant breached and/or anticipatorily breached the Agreement, Plaintiffs' election to terminate the Agreement and retain Defendant's deposit as a result of Defendant's material breach is consistent with Plaintiffs' legal rights and all applicable law.

f. Because Defendant breached and/or anticipatorily breached the Agreement, any and all damages suffered by Defendant for not acquiring the Membership Interest in Best Peacock Inn or the termination of the Agreement were caused by Defendant itself.

g. As the prevailing party, Plaintiffs are entitled to attorneys' fees and costs.

(*Id.* ¶ 36.) In its motion, the Buyer argues, among other things, that the requested relief is inappropriate for adjudication as a declaratory action.

### 3. Analysis

The Sellers insist that dismissal of their declaratory-judgment claim would be improper. In support, they maintain, first, their claim, although related to the issues raised in the Buyer's suit, is not exactly the same and therefore is not wholly subsumed by it. Second, they submit that, even if their claim *is* wholly duplicative of the issues raised by the Buyer's complaint, dismissal would still not be warranted because its possible the requested relief in the two suits is not necessarily redundant. Lastly, they argue that their claim seeks more than just an adjudication of past conduct and harms and instead seeks a determination of the parties' prospective rights and obligations. After careful review, the Court finds the Sellers' arguments miss the mark.

To start, the Sellers do not dispute that a claim for declaratory relief must be forward looking, aimed at addressing controversies before they have developed into actual legal wrongs. (Sellers' Resp. at 8.) Indeed, "[t]he Declaratory Judgment Act permits actual controversies to be settled *before* they ripen into violations of law or a breach of contractual duty." *Sierra Equity*, 650 F. Supp. 2d at 1230 (cleaned up) (emphasis added). Put simply, "the Declaratory Judgment Act was designed to prevent the accrual of *avoidable* damages, not those damages which had already occurred." *Id.* at 1230–31 (cleaned up) (emphasis added).

The Sellers' requested declarations focus on actions taken by the parties in the past: the Sellers' failure to close by October 8, 2021 (*e.g.*, Sellers' Compl. ¶ 20); what the Sellers describe as the Buyer's election, after October 8, to proceed with the agreement, as is (*e.g., id.* ¶ 23); the Buyer's refusal to consummate the Sellers' proposed purchase in February 2022 unless the Sellers agreed to a lower purchase price (*e.g., id.* ¶¶ 32–33); the Sellers' election to terminate the agreement (*id.* ¶ 34); and the Sellers' decision to retain the Buyer's deposit (*id.*). Accordingly, the damages the Buyer has suffered, which the Sellers would like the Court to declare were caused by the Buyer's own actions, have already occurred, as has the breach which the Sellers accuse the Buyer of. Similarly, the Sellers have not set forth allegations showing that they are seeking clarification as to the "legal relations at issue" or "to settle controversies *prior to* a legal breach of duty or contract." *Sierra Equity*, 650 F. Supp. 2d at 1231. As they set forth in their allegations, they have already chosen a course of action, come what may. In other words, a declaration from the Court, regarding these past controversies, will do nothing to "prevent the accrual of avoidable damages." The damage has been done: the Court's

adjudication of these issues would not "lead to a change in conduct by either party in order to conform their behavior to the law or to minimize the danger of future monetary loss by the parties." *Id.*

Relatedly, to the extent the Sellers' questions as to the propriety of their retaining the Buyer's deposit, while not moving forward with the sale, could be construed as seeking prospective relief, the Sellers fail to set forth allegations showing that their concern has in fact ripened into an actual controversy. And "[f]or a justiciable controversy to exist, there must be a substantial, definite and concrete dispute touching the legal relations of parties having adverse legal interests." *Cafe La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1175 (S.D. Fla. 2021) (Altonaga, J.) (cleaned up) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). That is, "[t]he controversy cannot be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *La Trova*, 519 F. Supp. 3d at 1175 (cleaned up) (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)). Here, there has been no suggestion, allegation, or even argument presented indicating that the Buyer has ever demanded the return of its deposit. Accordingly, any purely theoretical wrangling over the deposit falls far short of implicating the necessary "definite and concrete dispute" required to set forth a claim seeking declaratory relief.

Finally, whether the Sellers are required to perform under the terms of the agreement will be squarely addressed by an adjudication of the Buyer's earlier-filed claim for specific performance, asking the Court to order the Sellers to convey their membership shares, thereby conveying the real property, to the Buyer. In their answer to the Buyer's complaint, the Sellers' seventh affirmative defense maintains that, because of the Buyer's own breach, in February 2022, the Sellers "no longer owe [the Buyer] any duties under the terms of the Agreement." (Sellers' Ans., ECF No. at 7.) Nothing would be gained by a declaration of the parties' rights that wouldn't be expressly answered by an adjudication of the Buyer's own claim for specific performance or the Sellers' defense to that claim: whether the Buyer succeeds or fails in its count for specific performance, the Sellers' query as to whether their performance under the contract is required or not will be answered.

### 4. Conclusion

As set forth above, the Court concludes the Sellers are not entitled to the declaration of rights they request. The actual controversies they allege have already matured into actual wrongs or breaches of the parties' agreement. Further, to the extent the Sellers' concern about their continuing obligations under the contract might be construed as seeking prospective relief, those issues are nonetheless wholly subsumed by the claims and affirmative defenses

to be adjudicated through the Buyer's case. And, finally, the Sellers' concern about retaining the Buyer's deposit do not set forth an issue that has ripened into an actual controversy. Accordingly, the Court **grants** the Buyer's motion to dismiss (**ECF No. 11**), **with prejudice, in part**, as to the alleged conduct, and resulting harm, that has already occurred; and **without prejudice, in part**, as to rights the Court expects to be adjudicated through the Buyer's case and as to any rights related to inchoate disputes that have not yet ripened into real, immediate, or definite controversies.[4]

**Done and ordered**, in Miami, Florida, on March 14, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[4] The Buyer also asks the Court, in the alternative, to strike paragraphs thirty and thirty-three of the Sellers' complaint. Because the Court dismisses the complaint, it declines to address this argument.